UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE GUZMAN,

    Petitioner,

    v.

BEN CURRY, warden,

    Respondent.

No. C 07-3051 SI (pr)

**ORDER OF DISMISSAL WITH LEAVE TO AMEND**

## INTRODUCTION

Jose Guzman, an inmate at the Correctional Training Facility in Soledad, filed this pro se action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the court for review pursuant to 28 U.S.C. §2243 and Rule 4 of the Rules Governing Section 2254 Cases. His in forma pauperis application also is before the court for consideration.

## BACKGROUND

Guzman was convicted in the Los Angeles County Superior Court of second degree murder and was found to have used a firearm in the offense. In 1990, he was sentenced to 15 years to life in prison plus two years. His petition does not challenge his conviction but instead challenges a decision by the Board of Parole Hearings ("BPH") at a September 13, 2005 hearing that found him not suitable for parole. Guzman states that he presented his claims in a state habeas petition to the California Supreme Court before he filed this action.

**DISCUSSION**

A.   Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. Summary dismissal is appropriate only where the allegations in the petition are vague or conclusory, palpably incredible, or patently frivolous or false. See Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990).

B.   Claims

   1.   Right To Jury Trial

Guzman contends that his Sixth Amendment right to a jury trial was violated by "the Board's commissioner sentencing of petitioner to more than three years above the 228 months statutory maximum of the standard range for his offense, on the basis of sentencing commissioner finding that the commitment offense was carried out 'in an especially heinous, atrocious, or cruel manner.'" Petition, p. 7 (errors in source). The claim is somewhat ill-defined but appears to be based on the BPH's decision that Guzman would not be considered for parole again for three years and on his assertion that he now has served more time than the "statutory maximum of the standard range for his offense" under the matrix. Id. The claim will be dismissed because the Sixth Amendment right to jury trial was not implicated, let alone violated, by anything the BPH did in considering Guzman's case.

Guzman relies on a recent line of Supreme Court cases that started with Apprendi v. New Jersey, 530 U.S. 466 (2000). The rule from that line of cases is that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence [than the statutory maximum] must be found by a jury, not a judge, and established beyond a reasonable doubt, not

1 merely by a preponderance of the evidence." Cunningham v. California, 127 S. Ct. 856, 863-64 (2007). The relevant statutory maximum "'is not the maximum sentence a judge may impose after finding additional fact, but the maximum he may impose without any additional findings." Id. at 860 (quoting Blakely v. Washington, 542 U.S. 296 303-04 (2004)).

Guzman's claim runs into the insurmountable hurdle that the statutory maximum for his crime is life imprisonment. The maximum sentence allowed under California law following a fact-finder's guilty verdict on the second degree murder charge is life imprisonment.[1] See Cal. Penal Code § 190. No additional facts need to be found beyond those which were found by the trier of fact in his 1990 trial in order for Guzman to be kept in prison for the rest of his life. Nothing the BPH did has caused Guzman's sentence to extend beyond the life maximum to which he was sentenced and for which he may be imprisoned based on the second degree murder conviction. He has no right to jury trial in connection with any decision whether to release him before the expiration of his life maximum term. That the Apprendi line of cases does not apply is evidenced by the fact that an indeterminate sentencing scheme is one of the proposed solutions to the jury trial problems caused by determinate sentencing schemes the Court has invalidated. See, e.g., Blakely, 542 U.S. at 305 (citing with approval Williams v. New York, 337 U.S. 241 (1986) (judge's consultation of facts outside the trial record to decide whether to sentence defendant to death did not violate the jury trial right because the indeterminate sentencing scheme allowed the judge to sentence the defendant to death or imprisonment)); see also id. at 332 (Breyer, J., dissenting) (noting that one of the alternatives to Guidelines-type sentencing scheme is indeterminate sentencing, such as California's former system). In Blakely, the Court explained that indeterminate sentencing that gives a judge greater judicial power to set sentence does not infringe on the province of the jury: "It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to the lawful imposition of the penalty. Of course, indeterminate schemes involve judicial factfinding, in that

---

[1] Guzman indicates he was convicted following a court trial rather than a jury trial. The Apprendi analysis thus would be based on the maximum term he could receive based on the judge's decision as the trier of fact, and that is a life maximum.

3

1  a judge (like a parole board) may implicitly rule on those facts he deems important to the
2  exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has
3  a legal <u>right</u> to a lesser sentence–and that makes all the difference insofar as judicial
4  impingement upon the traditional role of the jury is concerned." <u>Blakely</u>, 542 U.S. at 308-09.

5        Guzman's statement that there is a statutory maximum under the matrix is simply a
6  misunderstanding of the law: there is no statutory maximum term of years for a person convicted
7  of second degree murder. California does have a regulation with a matrix of suggested base
8  terms for several categories of crimes. <u>See</u> 15 Cal. Code Regs. § 2403. For example, for second
9  degree murders, the matrix of base terms ranges from the low of 15, 16, or 17 years to a high of
10 19, 20, or 21 years, depending on some of the facts of the crime. However, that matrix is not
11 consulted to set a term unless and until the BPH has found the inmate suitable for parole. <u>See</u> 15
12 Cal. Code Regs. § § 2401, 2402, 2403(a); <u>In re Dannenberg</u>, 34 Cal. 4th 1061, 1070-71, 1078
13 (Cal.), <u>cert. denied</u>, 126 S. Ct. 92 (2005). The BPH has not yet had the occasion to consult the
14 matrix to determine an appropriate term for Guzman because it has not yet found him suitable
15 for parole. The matrix does not set a statutory maximum for the length of imprisonment for a
16 second degree murderer; California Penal Code § 190 does. And § 190 sets the statutory
17 maximum for such an inmate at life imprisonment. No jury trial must be provided to keep the
18 life inmate in prison beyond highest number of years in the matrix. The Sixth Amendment right
19 to jury trial has no applicability to the parole determination for California's murderers who are
20 serving indeterminate life sentences. The claim is dismissed without leave to amend.

21

22        2.    <u>Three-Year Denial Claim</u>

23        Guzman alleges that the BPH failed to comply with a state court decision prohibiting
24 multiple year denials after earlier one-year denials. At his 2005 hearing, the BPH told him he
25 would not be considered again for three years, even though at his 2003 hearing, he had received
26 only a one-year parole denial. He contends that this was done as a ploy to eliminate hearing
27 backlogs and violated his Fourteenth Amendment right to equal protection.
28        Guzman's claim that the BPH failed to comply with a state court order must be dismissed.

4

1  A state prisoner can only seek the writ of habeas corpus on the ground that he is in custody in
2  violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). In
3  other words, a writ of habeas corpus is available under § 2254(a) "only on the basis of some
4  transgression of federal law binding on the state courts." Middleton v. Cupp, 768 F.2d 1083,
5  1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)), cert. denied, 478 U.S.
6  1021 (1986). It is unavailable for violations of state law or for alleged error in the interpretation
7  or application of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Engle, 456 U.S. at
8  119.   Even if the 3-year denial violated a state court decision, federal habeas relief is not
9  available for that violation alone.

10        The petition also alleges that the 3-year denial violated Guzman's equal protection rights,
11 but this court does not understand how the facts alleged suggest an equal protection violation.
12 The Fourteenth Amendment's Equal Protection Clause provides that no State shall deny to any
13 person "the equal protection of the laws." U.S. Const. amend. XIV.  The Equal Protection
14 Clause ensures that "all persons similarly situated should be treated alike." City of Cleburne v.
15 Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  To prevail on an equal protection claim,
16 petitioner must initially show that he was treated differently from other similarly situated
17 persons. City of Cleburne, 473 U.S. at 439; Fraley v. United States Bureau of Prisons, 1 F.3d
18 924, 926 (9th Cir. 1993) (per curiam). Guzman has not done so. His conclusory allegation that
19 the 3-year denial was done to clear a backlog would not necessarily show an equal protection
20 violation; if the inmate is not expected to have made enough progress within a year or two years,
21 a three year denial would be appropriate. The partial transcript of the 2003 hearing attached to
22 the petition shows that Guzman was told in 2003 to "come back with a GED next time" and "you
23 do need to give some more thought as to what caused you to commit this crime," and "at some
24 point you're going to have to – need to try to make amends and come to grips or come to terms
25 with what you did."   11/4/03 RT 48.   Despite the guidance at the 2003 proceeding, as of two
26 years later he apparently had not obtained the GED degree or developed any insight into his
27 criminal conduct or alcohol problem.  The transcript of the 2005 hearing attached to Guzman's
28 petition contains the BPH's explanation why he received a three-year denial: he had "displayed

5

absolutely no insight into this behavior or the impact of his crime," apparently had "outright lied to his wife" about the reason for the crime (which apparently was to hurt a woman who had rebuffed his romantic advances by killing her father and threatening to kill another relatives), had programmed in a limited manner and had not yet obtained his GED, and had not sufficiently participated in beneficial self-help programs. 9/13/05 RT 51-52; see also 53-54 (commissioner explaining that a multiple year denial was given because Guzman had so much work to do on an alcohol problem that he had tried to minimize).

The second claim will be dismissed because the alleged failure to comply with the state court's decision is not a proper basis for federal habeas relief and because the petition does not state a claim for an equal protection violation. Leave to amend will be permitted so that Guzman may attempt to allege facts showing an equal protection violation.

**CONCLUSION**

For the foregoing reasons, the petition is dismissed with leave to amend. Guzman must file an amended petition no later than **September 7, 2007**. Guzman is cautioned that any claim he presents here must first have been presented to the California Supreme Court in order to exhaust his state court remedies. See 28 U.S.C. § 2254(b), (c). Guzman also is cautioned that this action concerns only the September 13, 2005 denial of parole and not any other parole denial decision. Failure to file an amended petition by the deadline will result in the dismissal of this action.

The in forma pauperis application is DENIED because Guzman has sufficient funds in his inmate account to pay the filing fee. (Docket # 2.) Guzman must pay the $5.00 filing fee no later than **September 7, 2007**. Failure to pay the filing fee by the deadline will result in the dismissal of this action.

IT IS SO ORDERED.

DATED: July 30, 2007

_____
SUSAN ILLSTON
United States District Judge